❒ Original ❒ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched or identify the person by name and address)*<br>information associated with Facebook profile ID conejo.santana.2025 maintained by Meta Platforms, Inc. | ) | Case No. 25-995M(NJ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the ____________ District of ____________ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before 9/10/2025 *(not to exceed 14 days)*

❒ in the daytime 6:00 a.m. to 10:00 p.m. ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to Honorable Nancy Joseph.
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❒ for _____ days *(not to exceed 30)* ☑ until, the facts justifying, the later specific date of 02/22/2026.

Date and time issued: 8/27/2025 @ 2:04 p.m. — Nancy Joseph
*Judge's signature*

City and state: Milwaukee, Wisconsin — Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

**Return**

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: ____________________

____________________
*Executing officer's signature*

____________________
*Printed name and title*

# ATTACHMENT A

## Property to Be Searched

**TARGET ACCOUNT**: This warrant applies to information associated with the Facebook account utilized by James Anthony SANTANA aka "Conejo" associated with the unique Facebook profile identification name of: **Conejo.santana.2025**. This is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California.

<u>**ATTACHMENT B**</u>

**Particular Things to be Seized**

**I. Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each user ID listed in Attachment A:

(a) All contact and personal identifying information, including James Anthony SANTANA aka "Conejo" Facebook Accounts**:** full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.]]

(b) All activity logs for the account and all other documents showing the user's posts and other Facebook activities from date of activation to latest activity on all accounts in the affidavit;

(c) All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them date of activation to latest activity on all accounts in the affidavit;

(d) including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(e) All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(f) All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, advertising ID, and user agent string;

(g) All other records and contents of communications and messages made or received by the user date of activation to latest activity on all accounts in the affidavit;

(h) including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(i) All "check ins" and other location information;

(j) All IP logs, including all records of the IP addresses that logged into the account;

(k) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(l) All information about the Facebook pages that the account is or was a "fan" of;

(m) All past and present lists of friends created by the account;

(n) All records of Facebook searches performed by the account date of activation to latest activity on all accounts in the affidavit;

(o) All information about the user's access and use of Facebook Marketplace;

(p) The types of service utilized by the user;

(q) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(r) All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(s) Records of any Facebook accounts that are linked to the account by machine cookies (meaning all Facebook user IDs that logged into Facebook by the same machine as the account); and

(t) All records pertaining to communications between Meta and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Meta is hereby ordered to disclose the above information to the government within **(14) days** of issuance of this warrant.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 21 U.S.C. §§ 841 and 846 and Title 18 U.S.C. § 922(g) involving unknown persons since dates of activation for each respective Facebook Account stated in the affidavit including, for each user ID identified on Attachment A, information pertaining to the following matters:

a. Evidence supporting violations of Title 21 U.S.C. §§ 841 and 846 and Title 18 U.S.C. § 922(g). Messages that have been sent and received by SANTANA.

b. Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

c. Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

d. The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

information associated with Facebook profile ID conejo.santana.2025 maintained by Meta Platforms, Inc.

Case No. 25-995M(NJ)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ____________ District of ____________, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. 846, 841(a)(1) | Conspiracy to possess with intent to distribute controlled substances, and possession with intent to distribute controlled substances |
| 18 U.S.C. 922(g) | Unlawful possession of a firearm by a prohibited person |

The application is based on these facts:

See attached Affidavit

- ☐ Continued on the attached sheet.
- ☑ Delayed notice of 180 days *(give exact ending date if more than 30 days:* 02/22/2026 *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Samuel L. Wasmund Digitally signed by Samuel L. Wasmund Date: 2025.08.26 11:24:16 -05'00'

*Applicant's signature*

Samuel Wasmund, DEA Special Agent

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

Date: 9/10/2025

*Judge's signature*

City and state: Milwaukee, Wisconsin

Honorable Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**APPLICATION FOR SEARCH WARRANT**

I, Samuel Wasmund, being first duly sworn, hereby depose and state as follows:

## I. INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook account that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), a company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the account.

2. I am a Special Agent with the Drug Enforcement Administration (DEA), having been so employed since October 2015. As such, I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Sections 2516(1)(e), 1956, and 1957, and Title 21, United States Code, Sections 841(a)(1), 843(b), 846, 856, 952, and 963. I have received specialized training on drug identification, surveillance operations, firearms handling, report writing techniques, confidential source handling, Title III wire interceptions and execution, search warrant execution, arrest procedures, and court proceedings.

3. Based on my training, experience, and participation in drug trafficking and computer related investigations, I know and have observed the following:

a. I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin as well as in other areas of the United States and internationally;

b. I am familiar with the coded language utilized over the telephone and other electronic communications to discuss drug trafficking and know that the language is often limited, guarded and coded. I also know the various code names used to describe controlled substances;

c. I know drug dealers often put telephones in the names of others (nominees) in order to distance themselves from telephones that they use to facilitate drug distribution. Because drug traffickers go through many telephone numbers, they often do not pay final bills when they are done using a telephone number and then are unable to put another line in the name of that subscriber;

d. I know drug traffickers often purchase and/or title assets in fictitious names, aliases or the names of relatives, associates or business entities to avoid detection of these assets by government agencies. I know that even though these assets are in the names other than the drug traffickers, the drug traffickers actually own and continue to use these assets and exercise dominion and control over them;

e. I know drug traffickers must maintain on-hand large amounts of currency to include currency stored in financial accounts readily accessible in order to maintain and finance their ongoing drug business;

f. I know it is common for drug traffickers to maintain books, records, receipts, notes ledgers, airline tickets, receipts relating to the purchase of financial instruments and/or the transfer of funds and other papers relating to the transportation, ordering, sale and distribution of controlled substances. The aforementioned book, records, receipts, notes, ledger, etc., are maintained where the traffickers have ready access to them. These may be in paper form as well as in digital form on computers, Smartphones, cellphones, and other electronic media or electronic storage devices;

g. I know it is common for large-scale drug traffickers to secrete contraband, proceeds of drug sales and records of drug transactions in secure locations within their residences, their businesses and/or other locations over which they maintain dominion and control, for ready access and to conceal these items from law enforcement authorities;

h. I know it is common for persons involved in drug trafficking to maintain evidence pertaining to their obtaining, secreting, transfer, concealment and/or expenditure of drug proceeds, such as currency, financial instruments, precious metals and gemstones, jewelry, books, records of real estate transactions, bank statements and records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashier's checks, bank checks, safe deposit box keys and money wrappers. These items are maintained by the traffickers within residences, businesses or other

locations over which they maintain dominion and control, as well as in digital form on computers, Smartphones, cellphones, and other electronic media or electronic storage devices;

i. I know large-scale drug traffickers often use electronic equipment such as telephones (land-lines and cell phones), pagers, computers, telex machines, facsimile machines, currency counting machines and telephone answering machines to generate, transfer, count, record and/or store the information described in the items above, as well as conduct drug trafficking activities;

j. I know when drug traffickers amass large proceeds from the sale of drugs, the drug traffickers attempt to legitimize these profits through money laundering activities. To accomplish these goals, drug traffickers utilize the following methods, including, but not limited to: domestic and international banks and their attendant services, securities brokers, professionals such as attorneys and accountants, casinos, real estate, shell corporations and business fronts and otherwise legitimate businesses which generate large quantities of currency;

k. I know drug traffickers commonly maintain addresses or telephone numbers which reflect names, addresses and/or telephone numbers of their associates in the trafficking organization in papers and books as well as in digital form on computers, Smartphones, cellphones, and other electronic media or electronic storage devices;

l. I know drug traffickers take or cause to be taken photographs or videos of themselves; their associates, their property and their drugs. These traffickers usually maintain these photographs or videos in their possession, often in digital form on computers, Smartphones, cellphones, and other electronic media or electronic storage devices;

m. I am familiar with computers, cellular telephones, Smartphones, pagers and their uses by drug traffickers to communicate with suppliers, customers, and fellow traffickers; Drug traffickers use these devices to record their transactions and aspects of their lifestyle related to drug dealing, whether in the form of voicemail, email, text messages, video and audio clips, floppy disks, hard disk drives, thumbnail drives, CD’s, DVD’s, optical disks, Zip disks, flash memory cards, Smart media and any data contained within such computers or cellular telephones, electronic storage media and other settings particular to such devices; I know that such devices automatically record aspects of such communications, such as lists of calls and communications, and any particularized identification assigned to those source numbers or email addresses by the owner of the devices; and

n. I know the following information can be retrieved to show evidence of use of a computer or Smartphone to further the drug trade: system components, input devices, output devices, data storage devices, data transmission devices, and network devices and any data contained within such systems; computer media and

any data contained within such media; operating system software, application or access program disks, manuals, books, brochures, or notes, computer access codes, user names, log files, configuration files, passwords, screen names, email addresses, IP addresses, and SIM cards.

4. This affidavit is based upon my personal knowledge and upon information reported to me by other federal and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

5. Based on the facts as set forth in this affidavit, there is probable cause to believe that James Anthony SANTANA aka "Conejo" (hereafter "SANTANA") is committing violations of 21 U.S.C. §§ 841 and 846: to wit, possession with intent to distribute cocaine, fentanyl, and marijuana; and conspiracy to possess with intent to distribute cocaine, fentanyl, and marijuana. Likewise, there is probable cause that SANTANA is committing violations of Title 18 U.S.C. § 922(g)(1): to wit, possession of a firearm by a prohibited person. Collectively, these violations are referred to as "Target Offenses". There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B. The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offenses being investigated; *see* 18 U.S.C. § 2711(3)(A)(i).

## II. PROBABLE CAUSE

6. This application arises out of a DEA investigation being conducted jointly by the DEA Milwaukee District Office (hereafter "MDO") and DEA Laredo District Office (hereafter

"LDO"). In November 2022, the LDO learned about the fentanyl distribution activities of SANTANA. The LDO obtained significant information regarding SANTANA's illicit activities in Laredo, Texas, and has provided this information to the MDO. This historical information is as follows:

> On November 15, 2022, a 911 call was placed concerning an overdose death that occurred at 506 East San Carlos Street, Laredo, Texas. Laredo Police Department Detectives and Laredo District Office DEA Agents responded to the scene and found the body of one female approximately 21 years of age, who was later identified as Ana Lizbeth Wehbe, hereinafter referred to as Wehbe, who was found dead due to an overdose outside the aforementioned residence. Agents went out to the scene and witnessed Wehbe already covered in a white sheet. When the sheet was removed, Agents saw Wehbe sitting and slumped over on a handicap commode chair. Wehbe was approximately five feet away from one of the entrances to the aforementioned residence.
>
> At the death scene was a female who identified herself as Evangelina GARCIA, hereinafter referred to as GARCIA. GARCIA was asked about the circumstances concerning Wehbe's overdose death. GARCIA stated that she did not know what happened, but that it was most likely that Wehbe died from an overdose. GARCIA stated to officers that she lived at the 506 East San Carlos Street residence with her boyfriend, Anthony James SANTANA, hereinafter referred to as SANTANA. GARCIA further stated that many people have overdosed at the aforementioned residence before. GARCIA granted consent to search the room she was staying in and common living areas.
>
> During the investigation of the death scene, Officers and Agents received information that SANTANA was near the crime scene in a maroon in color Dodge Ram truck. The Laredo Police Department conducted a traffic stop on SANTANA, in furtherance of the death investigation of Wehbe. Agents approached SANTANA and asked for consent to search SANTANA's cell phone. SANTANA gave consent and related to Agents that he had already deleted everything and that agents were not going to find anything. The Laredo Police Department conducted a search of SANTANA and discovered controlled substance in his possession. SANTANA was arrested for possession of a controlled substance and transported to Webb County Jail. SANTANA's cell phone was seized by Officers and Agents pending further investigation of Wehbe's death.
>
> At 506 East San Carlos Street, Officers and Agents conducted a search that resulted in the seizure of controlled substances (white powdery substance, crack cocaine, and marijuana). Officers and Agents discovered a cell phone that was linked to Wehbe, and advised GARCIA that her cell phone was being seized pending further investigation of Wehbe's death. During the search of the house, Agents discovered crack cocaine in a purse that belonged to GARCIA. The purse was identified as belonging to GARCIA because of paperwork that was in it. In the restroom, Agents found baggies that contained white powdery residue. In GARCIA's and SANTANA's restroom, Agents found a cylinder

containing white powdery residue. In the living room, Agents found a crack pipe. In GARCIA's purse, Agents found methadone prescribed to another person. In the living room, Agents found white powdery substance wrapped in baggies and folded up paper. In the master bedroom, Agents found unused clear plastic baggies that are used for street level sales of narcotics. Agents found a bag of marijuana in a closet next to the living room. The way Agents found and witnessed the discovery of narcotics inside the residence is consistent with how drug users/sellers live.

The Laredo Police Department discovered that a neighbor of 506 East San Carlos Street had surveillance cameras that provided an angled view of the front of 506 East San Carlos Street. Review of the camera footage has provided a partial insight to the events that transpired that led to the death of Wehbe. LPD Detective O'Brien provided me with a copy of the footage. Agents reviewed footage and discovered vehicles arriving and leaving from the residence. The footage also showed GARCIA, SANTANA, and Rigoberto SANTANA entering and exiting the residence.

On November 16, 2022, Laredo Police Department Detectives advised DEA Agents that SANTANA had been arrested for criminally trespassing on 506 East San Carlos Street Laredo, Texas. Agents went to go interview SANTANA at the Laredo Police Department. SANTANA was provided a form containing his Miranda Rights for him to sign to acknowledge he understood his rights. Furthermore, LPD Detectives read SANTANA his Miranda Rights and SANTANA waived them and stated that he was willing to answer some questions.

During the interview of SANTANA, SANTANA related to investigators that Wehbe arrived at the 506 East San Carlos residence at approximately 9:30 pm, on the night of November 14, 2022 and that Wehbe left at approximately 10:30 pm. During this time, SANTANA related that he and Wehbe were using drugs together. SANTANA related that Wehbe was using a crack pipe that belonged to GARCIA. SANTANA related that during the time that he and Wehbe were hanging out, SANTANA proceeded to have sex with Wehbe. SANTANA then stated that Wehbe began to make snoring sounds, which SANTANA made snoring sounds to the investigators to describe Wehbe's snoring sounds. SANTANA related that he thought Wehbe was pretending to overdose while they had sex. SANTANA related that he couldn't finish and stopped. SANTANA related that he told his brother Rigoberto SANTANA that Wehbe was overdosing. SANTANA related that he and his brother Rigoberto SANTANA injected Wehbe with salt and water in order to counteract Wehbe's overdose. SANTANA related that the salt and water injection was the suggestion his brother Rigoberto SANTANA made. SANTANA related that Wehbe woke up and was asked to leave because SANTANA didn't want anyone overdosing in the residence. SANTANA related that Wehbe left, but before heading out Wehbe did more drugs. SANTANA related that Wehbe was at the door asking to come back in, but that Wehbe was told to leave. Subsequently Wehbe was found dead on a chair outside the residence. SANTANA related that he left the scene because he didn't want issues and had GARCIA call 911.

At the Laredo District DEA Office, a DEA Intelligence Research Specialist conducted the cell phone extraction and agents reviewed the extraction. Cell phone exploitation of SANTANA's cell phone resulted with providing Officers and Agents an estimated timeline of events that resulted in Wehbe's death. The exploitation of SANTANA's cell phone showed that at approximately 8:40 p.m., on November 14, 2022, SANTANA conducted an internet web search of "what does Narcan look like." (Narcan, scientific name Naloxone, is a nasal spray used for the treatment of a known or suspected opioid overdose emergency with signs of breathing problems and severe sleepiness or not being able to respond.) The exploitation revealed that a screenshot was taken of the aforementioned internet web search and forwarded to a contact listed as "Densie," who was later identified as Denise TENORIO, hereinafter referred to as TENORIO. SANTANA sent a message to TENORIO that read "plzzz", followed by messages that included the address SANTANA was at. The messages were not forwarded because cell phone services were disconnected for failure to make payment. The timeline reveals SANTANA making payments for his cell phones services to be renewed. The cell phone exploitation of SANTANA revealed that he used cell phone messaging applications, and that Wehbe was one of SANTANA's contacts. The above-referenced messages were discovered during the cell phone extraction and Agents believed more are missing since SANTANA mentioned he deleted content related to Wehbe.

The Laredo Police Department conducted a death notification to the family of Wehbe. Wehbe's family provided Officers and Agents a cell phone that was logged on to some of Wehbe's messaging applications. Agents conducted exploitation of the cell phone provided by Wehbe's family that resulted in the discovery of a message from SANTANA to Wehbe. At approximately 3:18 a.m., on November 15, 2022, SANTANA sent a Facebook Instant Message over Facebook Messenger to Wehbe stating "Ey Ontas?" (Hey, Where are you?) and at approximately 3:20 a.m., SANTANA sent a second message over Facebook Messenger to Wehbe stating "????"

Through the exploitation of SANTANA's public Facebook profile, Agents saw a Facebook post where SANTANA stated "Any baritas HIT ME UP I need some ando BIEN TENSOOO!!!!!" Based on the the investigating officers' training, experience and knowledge of the case, "baritas," means bars, which is slang for Xanax pills. Below is a screenshot of the Facebook Post




On August 2, 2022, SANTANA made a Facebook post stating "WTF I need a Bar connect plz." Based on the investigating officers' training, experience and knowledge of the case, "bar" is slang for a Xanax pill. Below is a screenshot of the post




On December 5, 2021, SANTANA posted a Live Feed of himself (SANTANA) with bulk U.S. Currency. A Texas Workforce Commission (TWC) inquiry into SANTANA revealed that SANTANA did not have a work history. Below are screenshots from the live feed.


11:28
Conejo Santana
not liking it ok 😂 jk mvv....
39
3 comments 410 views
9+
Home
Friends
Marketplace
Dating
Notifications
Menu

11:28

Conejo Santana

not liking it ok 😂 jk mvv....




39 3 comments 410 views

Home Friends 9+ Marketplace Dating Notifications Menu

11:28

Conejo Santana

not liking it ok 😂 jk mvv....




39 3 comments 410 views

Home Friends Marketplace 9+ Dating Notifications Menu

SANTANA's Criminal History involves repeated Possession of Controlled Substances which corroborates law enforcement intelligence that SANTANA is a drug trafficker and habitual user of controlled substances.

7. The historical information detailed in paragraph 6 was provided by the LDO to the MDO regarding SANTANA's criminal activities in Laredo, Texas. Based upon the above information, on January 12, 2023, Honorable Webb County Judge Becki Palomo, of the 341st Judicial District of Texas, signed a warrant authorizing the search of a Facebook account being used by SANTANA. Since this time, it appears that SANTANA is now using a different Facebook account. The LDO also informed MDO that based upon recent Facebook postings, it appeared that SANTANA has relocated to Milwaukee, Wisconsin. SANTANA currently has an active warrant for failure to appear in relation to an Aggravated Robbery, Felony-1 in Laredo, Texas. This warrant was issued by the 341st Judicial District of Texas, and is for full extradition. Furthermore, a review of SANTANA's criminal record confirms that on or about November 10, 2004 he was arrested and later convicted for federal violations of Title 8 § 1324 (alien smuggling for financial gain). SANTANA was convicted and sentenced to 24 months of confinement and 3 years of supervised release. Later, on or about October 6, 2009, SANTANA was arrested for violations of Title 21 § 841(a): to wit, possession with intent to distribute marijuana. SANTANA was convicted and sentenced to 60 months confinement and 60 months of supervised release. SANTANA also has multiple arrests for a variety of local and state charges in Texas. Based upon SANTANA's criminal record, he is prohibited from possessing firearms.

8. Upon receiving the above-referenced information from the LDO, your affiant has conducted surveillance of SANTANA. On August 7, 2025, your affiant observed SANTANA exit an apartment complex located at 5611 N 40th Street, Milwaukee, Wisconsin 53209. Via open-source queries, your affiant has reviewed SANTANA's recent Facebook postings, which confirm

that SANTANA and his girlfriend, Evangelina GARCIA, are currently residing in the Milwaukee area. This review of SANTANA's Facebook postings also confirm that SANTANA continues to be involved in the distribution of controlled substances and is further suspected of possessing firearms.

9. Your affiant has conducted an open-source review of SANTANA's Facebook account, which bears the moniker "Conejo Santana," and uses the unique Facebook identification "Conejo.santana.2025" ("**TARGET ACCOUNT**"). This review has revealed the following Facebook posts that indicate that SANTANA continues to commit the aforementioned Target Offenses.

10. The Facebook background image for the **TARGET ACCOUNT** is below:



As indicated by the image, it was posted on October 15, 2021, and displays a monetary offering to "Santa Muerte" and "Jesus Mal Verde." Based on training and experience, your affiant knows that both "Santa Muerte" and "Jesus Mal Verde" are commonly revered by drug traffickers with ties to the Mexican cartels as "saints" capable of offering supernatural protection for their illicit endeavors. In the drug trafficking world, it is common to leave money, or another type of offering, to these "saints" to help ensure that the drug trafficker then receives good luck from "Santa Muerte" or "Jesus Mal Verde."

11. Below is an image that was captured from a video posted on the **TARGET ACCOUNT** on December 25, 2023:




This video shows an elf sitting on a bundle of what appears to be a bundle of compressed

marijuana. Based upon training and experience, your affiant knows that this marijuana bundle is consistent with marijuana that is frequently smuggled from northern Mexico into the United States along the southwest border near locations like Laredo, Texas. Through training and experience, your affiant knows that marijuana bundles that are trafficked from Mexico are normally trafficked in 10-kilogram increments and are commonly referred to as "22's" in the United States because they weigh approximately 22 pounds.

12. On March 6, 2025, the user of the **TARGET ACCOUNT**, believed to be SANTANA, posted a video on the **TARGET ACCOUNT** suggesting his involvement with bulk marijuana distribution. A screenshot of the video is shown below:




The video shows a cardboard box containing bundles that appear to be transported inside a vehicle.

Based on training and experience, your affiant believes that the bundles depicted in screenshot from the video are consistent with bundles of smuggled marijuana.

13. On March 1, 2025, the user of the **TARGET ACCOUNT**, believed to be SANTANA, posted a video on the **TARGET ACCOUNT** of masked subjects brandishing firearms. A screenshot of the video is shown below:




Above the video, the user of the **TARGET ACCOUNT**, believed to be SANTANA, wrote, "se

Muere o los Muremos ???," which in English translates as , "he Dies or we Die them???" (sic). Within the video is text that reads "@quil en kilwaukee," which translates from Spanish to English as "here in kilwaukee." The term "kilwaukee" appears to be a compound of the words "kill" and "Milwaukee," referencing gun violence in Milwaukee. The fact that the user of the **TARGET ACCOUNT**, believed to be SANTANA, posted such a video suggests his connection to such violent activity.

14. On January 20, 2024, the user of the **TARGET ACCOUNT**, believed to be SANTANA, posted a video of a female who appears to be Evangelina GARCIA, his girlfriend, and an unidentified female possessing an AR-15 style rifle and a handgun with a high-capacity magazine. Although SANTANA is not depicted in this video, your affiant believes that because SANTANA likely posted the video of his girlfriend possessing a firearm, then he would seem to

be able to readily access and possess firearms. Screenshots of the video are shown below:






On the caption for the video, the user of the **TARGET ACCOUNT**, believed to be SANTANA, wrote "POV: WHEN you HAVE UR RIDE or DIE you DON'T NEED any (emoji)'s)." Your affiant believes that the user of the **TARGET ACCOUNT**, believed to be SANTANA, was indicating that he was relying exclusively upon Evangelina GARCIA and an unidentified female to further his illicit activities.

15. On May 27, 2025, the user of the **TARGET ACCOUNT**, believed to be

SANTANA, posted a video of an Hispanic male who appears to be SANTANA holding an AR-15 style firearm and wearing what appears to be body armor. In the video, SANTANA is standing with several unidentified black males, who are wearing masks and holding what appear to be firearms. Above the video, the user of the **TARGET ACCOUNT**, believed to be SANTANA, wrote "aqui ANDAMOS sin MIEDO VENGANSE LOL. A NO PUEDEN," which translates in English as, "Here we ARE without FEAR. COME ON, LOL. YOU CAN'T." A screenshot of the video is shown below:




16. On June 8, 2025, the user of the **TARGET ACCOUNT**, believed to be SANTANA, posted a video of an Hispanic male who appears to be SANTANA displaying a Glock

handgun and wearing what appears to be body armor. Your affiant is familiar with Glock handguns and knows that the rear sights that are seen in the video are consistent with the stock sights provided with Glocks. A screenshot of the video is shown below:




Superimposed on the video is an image of a gun pointed at the face of rabbit or rodent. Above the video, the user of the **TARGET ACCOUNT**, believed to be SANTANA, wrote, “Aqui Ay con QUESO (cheese emoji) PARA LOS (rat emoji) sitos,” Which roughly translates in English to “cheese for the little rats.” Given the context, your affiant believes “rats” is a reference to

informants or those that provide information to law enforcement, and "cheese" is a coded reference for bullets. In other words, the user of the **TARGET ACCOUNT**, believed to be SANTANA, is conveying a threat against private individuals who assist or provide information about illicit activity to law enforcement. Based on this information, your affiant believes SANTANA continues to be involved in illegal activities and seeks to further those activities by means of threats and/or armed violence.

17. The historical investigation conducted by the LDO confirmed that SANTANA was involved in fentanyl distribution that led to the death of a drug user. This investigation has also confirmed that SANTANA has now relocated from Laredo, Texas to Milwaukee, Wisconsin, where he continues to be involved in violations of the "Target Offenses." This investigation has confirmed that SANTANA is involved in the distribution of fentanyl, cocaine, and marijuana. This investigation has also revealed that SANTANA is suspected of possessing firearms despite being prohibited from possessing firearms due to his prior felony convictions. Based upon the totality of the information, your affiant believes that SANTANA is using Facebook, as demonstrated in the above listed information. Accordingly, your affiant believes that information contained on **TARGET ACCOUNT** is relevant to this investigation, and will reveal evidence related to violations of 21 U.S.C. §§ 841 and 846 and Title 18 U.S.C. § 922(g) ("Target Offenses"). Your affiant knows that Facebook accounts are used to store data such as messages, pictures, and audio, IP location information, et cetera. Your affiant believes that the information contained on **TARGET ACCOUNT** will lead to the identification of locations utilized by SANTANA for violations of the "Target Offenses." At the same time, your affiant believes that the information contained **TARGET ACCOUNT** will lead to the identification of unknown co-conspirators that are involved in the violation of the Target Offenses. Finally, your affiant believes that the

information contained on **TARGET ACCOUNT** will lead to the identification of evidence of a crime; contraband, fruits of crime, or other items illegally possessed; and property designed for use, intended for use, or used in committing a crime.

## III. BACKGROUND CONCERNING FACEBOOK

18. Meta owns and operates Facebook, a free-access social networking website that can be accessed at http://www.facebook.com. Facebook users can use their accounts to share communications, news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

19. Meta asks Facebook users to provide basic contact and personal identifying information either during the registration process or thereafter. This information may include the user's full name, birth date, gender, e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Each Facebook user is assigned a user identification number and can choose a username.

20. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

21. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a

Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

22. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

23. Facebook users can upload photos and videos to be posted on their Wall, included in chats, or for other purposes. Users can "tag" other users in a photo or video, and can be tagged by others. When a user is tagged in a photo or video, he or she generally receives a notification of the tag and a link to see the photo or video.

24. Facebook users can use Facebook Messenger to communicate with other users via text, voice, video. Meta retains instant messages and certain other shared Messenger content unless deleted by the user, and also retains transactional records related to voice and video chats.

Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

25. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

26. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (i.e., non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

27. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

28. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

29. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

30. In addition to the applications described above, Meta provides users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

31. Meta also retains records of which IP addresses were used by an account to log into or out of Facebook, as well as IP address used to take certain actions on the platform. For example, when a user uploads a photo, the user's IP address is retained by Meta along with a timestamp.

32. Meta retains location information associated with Facebook users under some circumstances, such as if a user enables "Location History," "checks-in" to an event, or tags a post with a location.

33. Social networking providers like Meta typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

34. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Meta, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged

photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Meta logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, location information retained by Meta may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

35. Therefore, the servers of Meta are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## IV. CONCLUSION

36. Based on my training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that violations of violations of violations of Title 21 U.S.C. §§ 841 and 846 and Title 18 U.S.C. § 922(g), have been committed by the users of **TARGET**

**ACCOUNT**. There is also probable cause to search the location described in Attachment A for fruits, evidence and instrumentalities of these crimes further described in Attachment B.

## ATTACHMENT A

**Property to Be Searched**

**TARGET ACCOUNT**: This warrant applies to information associated with the Facebook account utilized by James Anthony SANTANA aka "Conejo" associated with the unique Facebook profile identification name of: **Conejo.santana.2025**. This is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California.

# ATTACHMENT B

## Particular Things to be Seized

### I. Information to be disclosed by Meta Platforms, Inc. ("Meta")

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each user ID listed in Attachment A:

(a) All contact and personal identifying information, including James Anthony SANTANA aka "Conejo" Facebook Accounts**:** full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.]]

(b) All activity logs for the account and all other documents showing the user's posts and other Facebook activities from date of activation to latest activity on all accounts in the affidavit;

(c) All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them date of activation to latest activity on all accounts in the affidavit;

(d) including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(e) All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(f) All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, advertising ID, and user agent string;

(g) All other records and contents of communications and messages made or received by the user date of activation to latest activity on all accounts in the affidavit;

(h) including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(i) All "check ins" and other location information;

(j) All IP logs, including all records of the IP addresses that logged into the account;

(k) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(l) All information about the Facebook pages that the account is or was a "fan" of;

(m) All past and present lists of friends created by the account;

(n) All records of Facebook searches performed by the account date of activation to latest activity on all accounts in the affidavit;

(o) All information about the user's access and use of Facebook Marketplace;

(p) The types of service utilized by the user;

(q) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(r) All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(s) Records of any Facebook accounts that are linked to the account by machine cookies (meaning all Facebook user IDs that logged into Facebook by the same machine as the account); and

(t) All records pertaining to communications between Meta and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Meta is hereby ordered to disclose the above information to the government within **(14) days** of issuance of this warrant.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 21 U.S.C. §§ 841 and 846 and Title 18 U.S.C. § 922(g) involving unknown persons since dates of activation for each respective Facebook Account stated in the affidavit including, for each user ID identified on Attachment A, information pertaining to the following matters:

a. Evidence supporting violations of Title 21 U.S.C. §§ 841 and 846 and Title 18 U.S.C. § 922(g). Messages that have been sent and received by SANTANA.

b. Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

c. Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

d. The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).